**Marion Stratton BRICK et al., Plaintiffs,**

v.

**DOMINION MORTGAGE & REALTY TRUST, a Massachusetts Real Estate Investment Trust et al., Defendants.**

Civ. No. 76–605.

United States District Court,
W. D. New York.

Nov. 29, 1977.

Eugene W. Landy, Landy & Spector, Eatontown, N. J., Francis J. Offermann, Jr., Offermann, Fallon, Mahoney, Cassano & Geller, Buffalo, N. Y., for plaintiffs.

James J. Maloney, Gene M. Bauer, Rogers & Wells, New York City, Gary F. Kotaska, Moot, Sprague, Marcy, Landy, Fernbach & Smythe, Buffalo, N. Y., for Dominion and certain individual defendants.

Howard G. Kristol, J. Joseph Bainton, Reboul, MacMurray, Hewitt, Maynard & Kristol, New York City, Thomas L. David, Gross, Shuman, Laub & David, Buffalo, N. Y., for Great Lakes Advisory, Gross, David & Gross, Shuman, Laub & David.

Alexander C. Cordes, Phillips, Lytle, Hitchcock, Blaine & Huber, Buffalo, N. Y., for Marine Midland Bank.

## MEMORANDUM and ORDER

ELFVIN, District Judge.

Plaintiffs have filed a four-count[1] complaint. The First Count alleges violations of sections 11 and 12(2) of the Securities Act of 1933, as amended, 15 U.S.C. §§ 77k and 77l(2) and of section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j and of the Securities and Exchange Commission's rule 10b–5, 17 C.F.R. § 240.10b–5, promulgated thereunder. The Second Count sets forth claims under these same sections against Marine Midland Bank, Inc. —Western ("Marine") individually and as agent for certain other lender banks under an aiding and abetting theory of liability. The Third Count alleges a shareholders' derivative cause of action on behalf of Dominion Mortgage & Realty Trust ("Dominion") against its controlling persons. The Fourth Count sets forth pendent state law causes of action based upon negligence, breach of contract and breach of fiduciary duty.

Dominion, an unincorporated Massachusetts business trust, and certain individual defendants[2] move to dismiss plaintiffs' First Count to the extent that it is premised upon alleged violations of sections 11 and 12(2) on the grounds that plaintiffs lack standing to assert such claims and that such claims are time-barred by section 13 of said Act, 15 U.S.C. § 77m.[3]

In general, section 11 creates a civil cause of action in favor of a person who acquires a security where any part of the registration statement contained an untrue statement of a material fact or omitted to state a material fact necessary to make the registration statement not misleading. Section 12(2) provides that a person who purchases a security has a cause of action against the seller where the seller's prospec-

tus or oral communication included such untrue statement or omission. Section 13, the limitations of actions provision, provides:

"No action shall be maintained to enforce any liability created under section 77k [11] or 77l(2)[4] [12(2)] of this title unless brought within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence, or, if the action is to enforce a liability created under section 77l(1) [12(1)] of this title, unless brought within one year after the violation upon which it is based. In no event shall any such action be brought to enforce a liability created under section 77k or 77l(1) of this title more than three years after the security was bona fide offered to the public, or under section 77l(2) of this title more than three years after the sale."

Paragraph 3 of the First Count of the complaint recites:

"On November 6, 1972, [Dominion] through a public offering sold $11,000,000 of 8% Subordinated Debentures, due 1987 and 550,000 detachable warrants to purchase 550,000 shares of beneficial interest, by means of a public offering of securities registered with the Securities and Exchange Commission under the Securities Act of 1933."

Plaintiffs' complaint was not filed until October 6, 1976, more than three years after the debentures were offered to the public. Under these circumstances, the clear and unambiguous language of section 13 would appear to bar plaintiffs' claims based upon section 11.

The cases which have addressed this issue have concluded that the three-year time

---

1. The individual causes of action are nominated as counts in the complaint.

2. Buck, Marsh, Brennan, Vassallo, Lang, Gelman, Dopkins, Connette and Taylor.

3. Although plaintiffs' complaint sets forth that the instant action is brought pursuant to section 12 of the Securities Act of 1933 without specifying any subsection, there are no allega-

tions in the complaint which could be construed to state a claim under subsection 1 of that section. In addition, plaintiffs have not contended in their memorandum of law or at oral argument that they are premising any claim on section 12(1) of that act.

4. "l" in the citation of this section is to be read as a lower case "L".

limitation pertaining to claims bottomed on section 11 is an absolute outer limit beyond which no complaint may be entertained. In an early case dealing with the question whether section 13 was satisfied by instituting suit within three years even if not within one year of actual or constructive discovery, *Shonts v. Hirliman,* 28 F.Supp. 478 (S.D.Cal.1939), the court commented:

"The maximum time provision in Section 13, to the effect that, in no event, shall an action be brought more than three years after the security was offered to the public, does not extend the limitation period. This provision means that if discovery is not made within three years, no action lies, *under any circumstances.* Otherwise put, if more than three years have elapsed since the offer of the security, the discovery of defendant's fraud comes too late. The object of this clause is merely to set the maximum period during which a person might be held liable, *under any circumstances,* by reason of any false statements in the registration statement. It does not dispense with the requirement that any person who brings an action within the three year period, must do so also within one year after the discovery of the falsity of the statement or the omission." *Id.,* at 486.

In *Fischer v. International Telephone & Tel. Corp.,* 391 F.Supp. 744 (E.D.N.Y.1975), plaintiff alleged that defendants' registration statement was false and misleading and omitted material facts in violation of section 11. Plaintiff's complaint was filed three years and two days after the date when, according to the court's determination, the stock in question had been bona fide offered to the public. The court concluded that, because such occurred more than three years prior to the commencement of the action, plaintiff's claims were time-barred by section 13.

In *Ingenito v. Bermec Corporation,* 376 F.Supp. 1154 (S.D.N.Y.1974), the court dismissed plaintiffs' claims alleging violations of section 12(1) for failure to plead compliance with the one-year and three-year periods of limitations contained in section 13. The court interpreted such section as requiring that an action based on section 12(1) be brought both within one year of actual or constructive discovery of the alleged violation and within three years after the security was bona fide offered to the public, whichever date was the earlier. This case, although dealing with violations of section 12(1) rather than claims bottomed on section 11, is of precedential value in the case now before me because the absolute three-year period of limitations contained in section 13 commences to run from the date the security was bona fide offered to the public for both alleged violations of section 11 and section 12(1). In *Direction Assoc., Inc. v. Programming & Systems,* 412 F.Supp. 714, 717 (S.D.N.Y.1976), the end of the period of three years after the date of sale of an unregistered security was termed "the outer limits" for commencing an action. The United States District Court for the Middle District of Louisiana has held section 13 to be "clear and unambiguous" and "absolute" concerning actions to which it pertains. *Cowsar v. Regional Recreations, Inc.,* D.C., 65 F.R.D. 394 (1974).

Plaintiffs contend that the fraudulent concealment doctrine is applicable and tolls the running of such three-year period of limitations. They place heavy reliance on *Holmberg v. Armbrecht,* 327 U.S. 392, 66 S.Ct. 582, 90 L.Ed. 743 (1946), and *Public Service Co. of New Mexico v. General Electric Co.,* 315 F.2d 306 (10th Cir.), *cert. denied,* 374 U.S. 809, 83 S.Ct. 1695, 10 L.Ed.2d 1033 (1963). In *Holmberg,* suit was commenced pursuant to section 16 of the Federal Farm Loan Act, 12 U.S.C. § 812, and, such legislation not containing a statute of limitations, it was necessary to borrow the appropriate period of limitations of the forum state. Plaintiffs alleged that they did not commence their action within the state time limit because an individual had concealed his ownership of certain stock. It was held that the equitable doctrine of fraudulent concealment applied and tolled the running of the adopted period of limitations. In so holding, Mr. Justice Frankfurter framed the parameters of inquiry to

determine when such equitable doctrine will toll a federal statute of limitation. Although he stated, 327 U.S. at page 397, 66 S.Ct. at page 585, as a general proposition that "[t]his equitable doctrine is read into every federal statute of limitation," he had stressed, at page 395, 66 S.Ct. at page 584, that "[i]f Congress explicitly puts a limit upon the time for enforcing a right which it created, there is an end of the matter. The Congressional statute of limitation is definitive."

In *Atlantic City Electric Co. v. General Electric Co.*, 312 F.2d 236 (2d Cir. 1962), the court held that the doctrine of fraudulent concealment applied to the period of limitations set forth in section 4B of the Clayton Act, as amended, 15 U.S.C. § 15b, because it found that Congress did not intend to enact an absolute period of limitations which would not be subject to tolling in cases of fraudulent concealment and did intend the doctrine of fraudulent concealment to apply to private civil antitrust actions. In its decision, the Court interpreted the decision in *Holmberg v. Armbrecht, supra,* as holding that defendant's fraudulent concealment will toll a federal statute of limitations unless Congress expressly provides to the contrary in clear and unambiguous language.

Similarly, the courts in *Public Service Co. of New Mexico v. General Electric Co., supra,* and *Kansas City, Missouri v. Federal Pacific Electric Co.,* 310 F.2d 271 (8th Cir.), *cert. denied,* 371 U.S. 912, 83 S.Ct. 256, 9 L.Ed.2d 171 (1962), held that the fraudulent concealment doctrine applied to the four-year statute of limitations contained in section 4B of the Clayton Act. Both courts, however, recognized that this equitable doctrine does not apply to a federal limitations period where Congress has provided for such by clear and unambiguous language. Thus, the initially controlling factor in making such a determination is Congressional intent. I find that Congress intended section 13's three-year period of limitations to be an absolute time bar to which the equitable doctrine of fraudulent concealment does not apply. Therefore,

plaintiffs' claims based upon alleged violations of section 11 of the Securities Act of 1933 are hereby dismissed as time-barred.

With respect to plaintiffs' causes of action based upon section 12(2) of the Securities Act of 1933, section 13 requires that all such claims be brought within one year after the actual or constructive discovery of the untrue statement or material omission *and* within three years of the sale of the securities to a particular plaintiff. *In Re Caesars Palace Securities Litigation,* 360 F.Supp. 366 (S.D.N.Y.1973). Paragraphs 3(a) & (b) of plaintiffs' complaint list the sales of units of debentures and shares of beneficial interests sold to various plaintiffs and the dates upon which those transactions occurred. Some of the sales occurred prior to three years before commencement of this action, while others took place subsequently. As set forth above, the fraudulent concealment doctrine does not apply to the three-year period of limitations contained in section 13. Therefore, those plaintiffs who purchased either units of debentures or shares of beneficial interests prior to October 6, 1973 may not pursue their section 12(2) claims and such claims are hereby dismissed as time-barred.

Plaintiffs' claims predicated upon section 12(2) which arise from sales which occurred on or after such date have satisfied the three-year period of limitation. However, section 13 also requires that such claims be brought within one year after the discovery of the untrue statement or omission, or after such discovery should have been made by the exercise of reasonable diligence. *Osborne v. Mallory,* 86 F.Supp. 869 (S.D.N.Y.1949). Compliance with the one-year period of limitations set forth in section 13 is an essential substantive ingredient of a private cause of action based upon section 12(2). *In Re Caesars Palace Securities Litigation, supra; Kroungold v. Triester,* 407 F.Supp. 414 (E.D.Pa.1975); *Kramer & Harrison v. Scientific Control Corp.,* 352 F.Supp. 1175 (E.D.Pa.1973). Plaintiffs must affirmatively plead sufficient facts to demonstrate that the requirements of section 13 have been satisfied;

otherwise their claims are subject to dismissal. *Premier Industries v. Delaware Valley Financial Corp.,* 185 F.Supp. 694 (E.D.Pa.1960).

A complaint that alleges violations of section 12(2) must set forth the time and circumstances of the discovery of the untrue statement or omission, the reasons why such was not discovered earlier (if more than one year has elapsed), and plaintiff's diligent efforts in such situation in making or seeking such discovery. *Kroungold v. Triester, supra,* at 419. Therein, the plaintiffs' amended complaint merely stated that:

> "Due to the fraudulent concealment practiced by the defendants, the plaintiff Kroungold was unaware, in the exercise of due diligence, of the fraudulent and deceptive acts and conduct of the defendants until March, 1974, and the plaintiff Bochey was unaware, in the exercise of due diligence, of the fraudulent and deceptive acts and conduct of the defendants until June, 1974."

Such allegation was held to be inadequate to satisfy the pleading requirements of section 13.

In the case at hand, plaintiffs attempt to show compliance with the one-year time period by asserting in paragraph 23 of their complaint:

> "Any statute of limitations applicable to the prospectuses and to the misstatements of material facts are tolled by the reason of the concealment of the fraud by the defendants."

This allegation is insufficient to show that plaintiffs' action was instituted in a timely fashion under the one-year time limitation. The complaint does not allege the date on which plaintiffs discovered the allegedly untrue statements or material omissions. There are no allegations setting forth what efforts plaintiffs made to discover such misrepresentations. Therefore it is impossible to ascertain, based upon the complaint in its present form, whether the instant action was filed within one year after plaintiffs discovered or should have discovered the alleged untrue statements or the omissions

of material fact. Plaintiffs' complaint fails to allege sufficient facts to conform to the one-year period of limitations of section 13. In such situations, absolute dismissal of section 12(2) claims is usually not warranted and leave to amend should be granted unless such claims are subject to dismissal upon other grounds. *See, In Re Caesars Palace Securities Litigation, supra; Kramer & Harrison v. Scientific Control Corp., supra.*

Dominion contends that leave to amend should not be granted with respect to plaintiffs' section 12(2) claims arising from sales occurring within three years prior to the filing of the instant complaint and that such claims should be dismissed because there are no allegations establishing that the person who offered such securities or from whom such securities were purchased was a defendant or that such offeror or seller had conspired with or was aided and abetted by a defendant. It is true that section 12(2) only creates a private cause of action on behalf of a purchaser of securities against his immediate offeror or seller or those who conspire with or aid and abet him or who significantly participate in such transaction to warrant imposition of liability. *Katz v. Amos Treat & Co.,* 411 F.2d 1046 (2d Cir. 1969); *Demarco v. Edens,* 390 F.2d 836 (2d Cir. 1968); *Hill York Corp. v. American Internat'l Franchises, Inc.,* 448 F.2d 680 (5th Cir. 1971). However, for purposes of ruling on a motion to dismiss, the allegations in the complaint must be accepted as true and construed favorably to the plaintiffs. *Heit v. Weitzen,* 402 F.2d 909, 913 (2d Cir. 1968). A motion to dismiss should not be granted unless it is clear that plaintiffs could not prove any set of facts in support of their claim which would entitle them to relief. *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Paragraph 9 of the Third Count of the complaint alleges that defendant Gross, prior to disclosure of Dominion's losses, sold approximately 29,000 shares of Dominion which he owned. It is unclear whether such alleged sales involved both units of debentures and shares of beneficial interests or merely the

latter. Defendants have not contended that only one type of security interest was involved in such sales. Under these circumstances, such allegation should be liberally construed to include both types of securities.. Although the dates on which Gross sold his interests in Dominion are not alleged, a liberal reading of the complaint indicates that certain plaintiffs may have purchased units of debentures or shares of beneficial interests in Dominion within three years prior to the filing of the instant complaint from Gross or from other defendants. Whether this is so must await discovery or trial on the merits. The inability of plaintiffs to know at this stage of litigation from whom they purchased their securities warrants a denial of the requested dismissal of those section 12(2) claims based upon sales occurring within three years prior to the commencement of their action. It cannot yet be stated that beyond doubt plaintiffs could not prove any set of facts which would entitle them to relief. Dominion's motion to dismiss plaintiffs' section 12(2) claims on the ground that the complaint does not allege that defendants offered or sold those securities to plaintiffs or that the offeror or seller had conspired with or was aided and abetted by defendants is hereby denied; but such denial is conditioned on plaintiffs amending their complaint within twenty days following the entry of this Memorandum and Order with respect to their claims bottomed on section 12(2) arising from sales of securities occurring within three years prior to the filing of the instant complaint so as to allege specifics showing that the one year period of limitations has been satisfied. If such amendment be not so made, defendants' said motion shall hereby be deemed granted.[5]

Dominion and three of its trustees[6] move to dismiss the derivative claims set forth in the Third Count for failure to comply with the pleading requirements of Fed.R.Civ.P. rule 23.1 and of the common law of the State of Massachusetts. Rule 23.1 provides in pertinent part:

"In a derivative action brought by one or more shareholders or members to enforce a right of a corporation or of an unincorporated association, the corporation or association having failed to enforce a right which may properly be asserted by it, the complaint shall * * * allege with particularity the efforts, if any, made by the plaintiff to obtain the action he desires from the directors or comparable authority and, if necessary, from the shareholders or members, and the reasons for his failure to obtain the action or for not making the effort. * * * *"[7]

Plaintiffs attempt to satisfy such pleading requirements by alleging in paragraph 5 of the Third Count of the complaint that:

"Plaintiffs have brought to the attention of Gordon Gross and members of his law firm, the allegations in this Complaint. The nature of this Complaint is that the controlling persons of Dominion have participated in a fraudulent device and scheme and, therefore, it would be futile to request Dominion and its controlling persons to sue themselves."

▆▆▆▆▆ It should be initially noted that Fed.R.Civ.P. rule 23.1 does not mandate that a demand be made upon the business entity's controlling authority, but only requires that, if none was made, the complaint allege with particularity the reasons for not making the effort. Merely bringing the allegations of the complaint to the attention of the Chairman of the Board of Trustees[8] does not constitute an adequate

---

**5.** However, and in this connection, see the final paragraph hereof.

**6.** Buck, Marsh and Vassallo.

**7.** Rule 23.1 has been held to be applicable to a Massachusetts business trust, *In re KMF Actions,* 56 F.R.D. 128 (D.Mass.1972), *aff'd* 479 F.2d 257 (1st Cir.), *cert. denied,* 414 U.S. 857,

94 S.Ct. 161, 38 L.Ed.2d 107 (1973), and no party to this action has contended to the contrary.

**8.** Defendant Gross is one of the four trustees of Dominion, Chairman of Dominion's Board of Trustees, Chairman of the Board of Directors of Dominion's advisor, Great Lakes Advisory Service, Inc., and the beneficial owner of a

demand for board action to enforce the rights plaintiffs are attempting to assert derivatively. Other than this allegation of notice, plaintiffs have not otherwise alleged in their complaint that they made any demand on Dominion's controlling authority, but claim that such request should be excused because it would have been a futile and useless gesture to expect those comprising or constituting such authority to sue themselves and it would have been an unreasonable burden to solicit the combined action of Dominion's numerous shareholders or members. Dominion contends that plaintiffs have failed to allege with particularity, as required by rule 23.1, the reasons for not making such demands.

A determination whether a complaint has sufficiently pleaded reasons to excuse making such demand lies within the sound discretion of the district court judge. *Nussbacher v. Continental Ill. Nat. B. & T. Co., Chicago,* 518 F.2d 873, 878 (7th Cir. 1975); *deHass v. Empire Petroleum Company,* 435 F.2d 1223, 1228 (10th Cir. 1970). In ruling on such question, the factual allegations in the entire complaint should be considered in conjunction with the particular paragraph in which plaintiffs assert that the demand would be futile. *Citrin v. Greater New York Industries,* 79 F.Supp. 692, 697 (S.D.N.Y.1948); *Cohen v. Industrial Finance Corporation,* 44 F.Supp. 491, 495 (S.D.N.Y. 1942). In *Cathedral Estates v. Taft Realty Corporation,* 228 F.2d 85, 88 (2d Cir. 1955), the court in construing Fed.R.Civ.P. rule 23(b), the predecessor to present rule 23.1, stated:

> " * * * It is clear that under Rule 23(b) and its predecessors a demand need not be made on the directors or shareholders where such demand would be 'futile', 'useless,' or 'unavailing' * * *. And where the directors and controlling shareholders are antagonistic, adversely interested, or *involved in the transaction attacked,* a demand on them is presumptively futile and need not be made. * *."
> (Emphasis added.)

The court in *Liboff v. Wolfson,* 437 F.2d 121 (5th Cir. 1971), reversed a dismissal of a derivative action by the district court which had concluded that the complaint failed to comply with rule 23.1. The complaint had merely alleged that:

> "Demand by plaintiff that the Board of Directors of the Corporation bring this action would have been futile. The majority of said directors, participated, approved of and acquiesced in said transaction and are liable therefor. The directors of the Corporation would not and could not diligently prosecute this action because they would have to bring it against themselves which would prevent its effective prosecution."

In upholding the sufficiency of such allegation, the *Liboff* court stated, at page 122, that "we have not the slightest difficulty in deciding that the allegations as to the reason why demand was not made upon the board of directors fully meet the requirements of the rule". In *Meltzer v. Atlantic Research Corporation,* 330 F.2d 946 (4th Cir.), *cert. denied sub nom., Sloan v. Meltzer,* 379 U.S. 841, 85 S.Ct. 80, 13 L.Ed.2d 47 (1964), a shareholders' derivative suit was brought alleging misfeasance and nonfeasance on the part of all directors of the corporation. The court held that demand upon the directors would have been "utterly unavailing". Furthermore, the court stated that "[i]t was too much to expect that the Board would direct the corporation to sue themselves". *Id.,* 948. *See, also, Pioche Mines Consolidated, Inc. v. Dolman,* 333 F.2d 257, 265 (9th Cir. 1964), *cert. denied,* 380 U.S. 956, 85 S.Ct. 1081, 13 L.Ed.2d 972 (1965). In *Papilsky v. Berndt,* 59 F.R.D. 95 (S.D.N.Y.1973), a stockholders' derivative suit was commenced in which the complaint alleged that the individual defendants were at the times of suit and of the challenged transactions directors of the corporation and that all directors participated or acquiesced in the wrongs alleged. The court held that to require plaintiffs to make a demand on the directors would have been

substantial number of shares and warrants to purchase additional shares in Dominion. *See,*

affidavit of Roswell S. Buck, trustee and President of Dominion, paragraph 6.

unreasonable. In *Jannes v. Microwave Communications, Inc.*, 57 F.R.D. 18 (N.D.Ill. 1972), a stockholders' derivative action was brought alleging violations of section 10(b) of the Securities Exchange Act of 1934 and rule 10b–5. Plaintiffs had not made a demand upon the corporation's directors and contended that they should have been excused therefrom because such would have been futile inasmuch as all of the directors were named as defendants. Defendants asserted that plaintiffs' excuse was not pleaded with sufficient particularity to satisfy rule 23.1. The court held that the demand was excused because the complaint alleged wrongdoing on the part of all the directors and it would have been unrealistic to expect directors to vote to bring suit against themselves. *See, also, Dopp v. American Electronic Laboratories, Inc.*, 55 F.R.D. 151 (S.D.N.Y.1972).

In the instant complaint, plaintiffs have alleged that all directors of Dominion participated in a plan and scheme to defraud investors in Dominion. The directors at the time the complaint was filed were the same as those in office at the time the alleged wrongful actions occurred. *See,* affidavit of Roswell S. Buck. Plaintiffs' complaint alleges that it would be futile to expect the directors to sue themselves. Under these circumstances, I conclude that demand upon the directors is excused and that plaintiffs' complaint in this respect has met the pleading requirements of rule 23.1.

The decisions in *Brody v. Chemical Bank,* 482 F.2d 1111 (2d Cir. 1973), and *In Re Kauffman Mutual Fund Actions,* 479 F.2d 257 (1st Cir.), *cert. denied,* 414 U.S. 857, 94 S.Ct. 161, 38 L.Ed.2d 107 (1973), are not to the contrary. In *Brody,* as the court pointed out, prior to the commencement of the derivative suit a new board of directors who were not implicated in the alleged wrongdoing had been appointed. In *Kauffman,* although the complaint alleged that the affiliated directors[9] dominated and controlled the board of directors, the court emphasized that the unaffiliated directors, who constituted a majority of the board, were not

named as defendants and that the complaint did not allege that the unaffiliated directors at the time of suit were the same ones who comprised the board when the contracts in question were approved. In addition, the court's statement in *Phillips v. Bradford,* 62 F.R.D. 681 (S.D.N.Y.1974), that merely naming all directors as defendants does not by itself establish that a demand would have been futile must be read in view of the fact that in such case only one director had been served and made a party to the action. Such statement is inapplicable to the instant case where the allegations of the complaint (the verity of which I must accept on a motion to dismiss) implicate the so-called independent trustees in the alleged wrongdoing. It is also of interest to note that the court in *Phillips* went on to hold that demand on the directors was futile because of a conflict of interest and denied the motion to dismiss.

With respect to whether a demand on shareholders is necessary, Dominion contends that the law of Massachusetts should be applied and requires such a demand in the present case. Plaintiffs allege that Massachusetts law does not control and that federal law should be looked to, but even if Massachusetts law is applied, a demand on the shareholders should be excused.

Dominion argues that the Third Count of the complaint sets forth a pendent state common law cause of action to which state law must be applied. I do not agree that the Third Count is merely a pendent state claim. Paragraph 1 of the First Count of the instant complaint states:

"This court has jurisdiction over this action under Section 10 of the Securities Exchange Act of 1934, 15 U.S.C. § 78j; and under Section 27 of said Act, 15 U.S.C. § 78aa, the action being commonly denominated a Securities and Exchange Commission Rule 10b–5 action."

Fed.R.Civ.P. rule 10(c) provides that statements in a pleading may be adopted by reference in a different part of the same pleading. The Third Count of the com-

---

9. *I. e.,* affiliated with the funds' external advisors. *See,* 15 U.S.C. § 80a–2(a)(3).

plaint alleges a plan and scheme to defraud investors and does allege a violation of federal securities laws—to wit, section 10(b) of the Securities Act of 1934 and rule 10b–5—by expressly incorporating by reference in that derivative count the allegations set forth in the non-derivative First and Second Counts of the complaint.

▪ Furthermore, a shareholders' derivative suit in which the corporate rights sought to be asserted are federally created is itself a federal cause of action. *Fielding v. Allen*, 181 F.2d 163 (2d Cir.), *cert. denied sub nom., Ogden Corp. v. Fielding*, 340 U.S. 817, 71 S.Ct. 46, 95 L.Ed. 600 (1950). Therein, the court stated, at 167–168:

 " * * * Although it is clear that the [corporation's] right is federal in nature, the source of the shareholder's right to sue on it requires some further examination. * * * [W]e think that the stockholder's right to maintain a derivative action on a corporate right federal in nature is federally conferred.

 \*    \*    \*    \*    \*    \*

"The stockholder's derivative suit \* · \* was early recognized by Chancery. It has long been familiar in the federal courts. And since the passage of the Act of March 3, 1875, 18 Stat. 470 [see 28 U.S.C.A. § 1331], conferring federal jurisdiction over cases arising under the Constitution and laws of the United States, many federal questions of importance have been raised in stockholder's derivative actions. Consequently we think that the right of a stockholder to sue on his corporation's federal cause of action is itself federal in nature \* \* \*."

In addition, a review of the entire complaint reveals that plaintiffs' pendent state claims are set forth in the Fourth Count of the complaint. The derivative claim set forth in the Third Count is premised upon a federal statute and thus states a federal cause of action.

▪ Even though the Third Count sets forth a federal derivative claim, whether a demand on shareholders is required and what will excuse such a demand are questions grounded in applicable state law.[10] In *Brody v. Chemical Bank, supra*, at 1114, a suit alleging both a violation of section 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q(a), and common law fraud, the court stated:

 "[I]t is settled that the federal courts will look to ˋthe state law in such cases to determine whether a demand on stockholders is necessary."

*See, also, Gottesman v. General Motors Corporation*, 268 F.2d 194, 197 (2d Cir. 1959); *Jones v. Equitable Life Assurance Society of U. S.*, 409 F.Supp. 370, 374 (S.D.N.Y. 1975); *Dopp v. American Electronic Laboratories, Inc., supra*, at 155 (fn. 10).[11]

▪ The applicable state law is that of the State of Massachusetts, the state in which Dominion was formed pursuant to a Declaration of Trust. *Brody v. Chemical Bank, supra*, at 1114; *Dopp v. American Electronic Laboratories, Inc., supra*, at 155. Massachusetts has taken the minority position and has adopted the so-called "business decision" rule, which requires that the majority shareholders must decide all questions of corporate policy when such a determination devolves upon them. Under Massachusetts law, a demand on shareholders is required whenever a majority of the voting stock is not owned or controlled by the alleged wrongdoers, even though the alleged wrong cannot be ratified by them. *S. Solomont & Sons Trust, Inc. v. New England Theatres Operating Corp.*, 326 Mass.

---

**10.** If the Third Count had merely alleged a pendent state law claim, I would still have been constrained to apply pertinent state law to the issue of what would excuse a demand on the shareholders. *See, Carroll v. New York, New Haven & Hartford R.R.*, 141 F.Supp. 456 (D.Mass.1956); *Pomerantz v. Clark*, 101 F.Supp. 341 (D.Mass.1951).

**11.** The United States Court of Appeals for the First Circuit in *Levitt v. Johnson*, 334 F.2d 815 (1st Cir. 1964), held that Massachusetts state law should not be applied to determine if a demand on shareholders is required in a suit brought pursuant to the Investment Company Act of 1940, 15 U.S.C. §§ 80a–1 *et seq*. Whether its rationale can also be applied to 10b–5 actions need not be addressed because I am constrained to follow the decision in *Brody*.

99, 93 N.E.2d 241 (Sup.Ct.1950); *Datz v. Keller*, 347 Mass. 766, 196 N.E.2d 922 (Sup. Ct.1964); *Palley v. Baird*, 356 Mass. 737, 254 N.E.2d 894 (Sup.Ct.1970); *see, also, In Re KMF Actions, supra*, at footnote 5. In *Heit v. Brown*, 47 F.R.D. 33 (D.Mass.1967), the court summarized the law of Massachusetts with respect to the requirement for a demand on shareholders as follows:

> "The only excuses for failing to make a demand on stockholders are that (1) the holders of a majority stock interest are in the group of wrongdoers, or under their control * * * or (2) it is necessary that action should be taken too speedily to leave time for a corporate meeting of stockholders." *Id.*, at 34–35.

Plaintiffs have not alleged in their complaint that a demand was made upon Dominion's shareholders or members and have not made any assertion that such a demand would have been futile or set forth any reasons to show that such demand would have been an unreasonable burden. Furthermore, they have not alleged that a majority of the voting stock is controlled by the alleged wrongdoers as required by the substantive law of Massachusetts to excuse a demand on the shareholders. Therefore, the complaint fails to comply with the requirements of rule 23.1 and their shareholders' derivative claim set forth in the Third Count of the complaint is hereby dismissed.

Dominion and certain other individual defendants[12] move pursuant to Fed.R.Civ.P. rule 9(b) to dismiss the complaint for failure to plead fraud with particularity. The complaint in its First Count alleges that Dominion, in connection with the purchase and sale of securities, used and employed manipulative and deceptive devices and contrivances in violation of section 10(b) of the Securities Exchange Act of 1934 and of rule 10b–5 of the Securities and Exchange Commission with the objective of securing large management fees for Great Lakes Advisory Service, Inc. and large legal fees for the law firm of Gross, Shuman, Wiltse and Laub. The complaint does not merely make this general allegation, but specifies certain acts and conduct comprising the alleged fraud.

The complaint alleges that plaintiffs were induced to invest in Dominion's debentures through prospectuses, proxy statements, quarterly reports, filings with the SEC and annual reports, which depicted Dominion as an efficient and profitable real estate trust. It is alleged that, contrary to such reports and statements, Dominion was inefficiently managed and inadequately and incompetently staffed, and that Dominion inflated earnings, concealed losses and failed to establish adequate reserves on projects in which it had invested. Plaintiffs allege that the annual and quarterly reports attribute Dominion's substantial losses to unfavorable market developments in 1974 and 1975 when they resulted from problem loans which had existed since 1972 but were not disclosed. It is contended that Dominion reported a profit for the fiscal years 1972 through 1975, but that such reported figures were overstated and that Dominion operated at a considerable loss in those years.

The complaint alleges that, with respect to a particular mortgage construction loan in Massachusetts, substantial losses were incurred by Great Lakes Advisory Service which had agreed to indemnify Dominion for all losses suffered on such loan. It is alleged that the advisory contract was amended in a subsequent year to provide additional compensation to Great Lakes which amendment had the practical effect of offsetting the loss incurred in the earlier year. On certain projects Dominion would advance large amounts of money based upon completed appraisal values which far exceeded the actual cost of construction. Part of the disbursements were made for so-called "soft costs" which were not adequately accounted for, but were merely described as "administration" and "advertising" expenses and some funds were disbursed to parties who had other business relationships with Dominion or with controlling persons of Dominion.

---

**12.** See those individuals named in footnote 2, *supra.*

It is said that the affiliation between Dominion and its controlling persons and certain joint venturers and the fact that Dominion provided 100% funding, including travel, entertainment and commissions to brokers who were also joint venturers were not adequately disclosed. Dominion would claim substantial income from various construction projects even though it was aware of improper engineering and faulty construction and the economic projections indicated an inability to recoup the money advanced. Dominion did not disclose to its investors that it had levied charges of improper performance against its construction and mortgage supervisory company, including improper disbursement of funds and submission of false information. The complaint alleges that funds were disbursed through mere conduits or dummy corporations which had had previous affiliation with Dominion and its controlling persons.

During the period from May 31, 1971 to May 31, 1975 numerous loans are said to have fallen into default. In order to conceal these losses, Dominion recast such loans, in certain cases in such a manner as to create additional fictitious income. There were no adequate controls and Dominion did not disclose to investors the true nature of its investments. Until May 31, 1974 Dominion continued to book purported construction income on real estate construction projects which were experiencing severe financial difficulties without setting up adequate reserves.

Paragraph 17 of the complaint alleges that, with respect to a certain project in Georgia, known as "Trade Winds", correspondence revealed that Dominion recognized a loss situation as early as November 27, 1972. Plaintiffs quote from a letter of that date from Myron Roblins to Gross in which it was allegedly stated that "the mortgage receivable is increasing at a rate of more than $50,000 per year without any further prospect of any further income." Another letter of February 6, 1973 allegedly referred to the "complete dissatisfaction of this loan and the entire project." Another letter from the architect, dated March 20, 1973, allegedly speaks of withholding payments until "fraudulence" pertaining to various contracts is investigated. The complaint then alleges that despite this knowledge Dominion continued to book interest income on the Trade Winds project, failed to establish adequate reserves, and attempted to conceal the losses by structuring fictitious recasts of the investment.

Paragraph 19 of the complaint alleges that Dominion made construction loan advances of over three million dollars to borrowers who did not perform the construction work as agreed and that before May 31, 1973 the work on such construction had been halted, construction funds had been improperly disbursed and such loan had fallen into default with inadequate disclosure of interrelationships or of such delays, defaults or losses. Furthermore, plaintiffs allege that substantial known losses in 1972 and 1973 were concealed from investors, and that by May 31, 1973 defaults and serious problem loans known to Dominion's trustees and management affected commitments in excess of $19,000,000.

These allegations satisfy the pleading requirements of rule 9(b). In *Felton v. Walston and Co., Inc.*, 508 F.2d 577 (2d Cir. 1974), it was alleged that an accountant had failed to follow generally accepted accounting principles in auditing the books of a publicly held corporation. The accountant was charged with having reviewed certain agreements entered into between the corporation and others and having failed to reflect accurately the effect of those agreements on the corporate financial statements with the result that its assets were substantially inflated. As a cited example, the value of stock used to purchase a certain license was inflated in order to increase the corporation's assets and that such was not disclosed by the accountant. The court held that these allegations were sufficient to satisfy the requirements of rule 9(b). It was held (p. 581):

"While the allegations here are not as specific as might be desired, they do specify the agreements and amounts involved in the alleged misrepresentation. They

cannot be characterized as merely conclusory since they clearly are much more than a bald assertion that [the accountant] engaged in fraudulent acts. * * * [I]n applying rule 9(b) we must not lose sight of the fact that it must be reconciled with rule 8 which requires a short and concise statement of claims."

The cases cited by Dominion—*Segan v. Dreyfus Corporation*, 513 F.2d 695 (2d Cir. 1975), and *Segal v. Gordon*, 467 F.2d 602 (2d Cir. 1972)—are distinguishable from the case at hand. In *Dreyfus* rule 9(b) was found not to be satisfied because the complaint alleged specific facts with respect to only one transaction in a scheme claimed to stretch over a period of years. In *Gordon* the allegations in the complaint merely consisted of bald conclusory allegations of "artifices, schemes, and devices to defraud" without any particularization. These cases do not support a finding that the present complaint is deficient in complying with rule 9(b). Therefore, Dominion's motion to dismiss for failure to allege fraud with particularity is hereby denied.

Dominion alleges that plaintiffs' claims bottomed on section 10(b) of the Securities Act of 1934 are time-barred, asserting that the statute of limitations to be applied is the one contained in New Jersey's blue sky law, N.J.S.A. § 49:3–71, which provides that any action alleging that a security was offered or sold by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to render the statements not misleading cannot be brought more than two years after the contract of sale. Plaintiffs argue that the statute of limitations to be applied in section 10(b) cases is the appropriate state's time period pertaining to general fraud actions. They contend that, under New Jersey's conflict of laws principles, courts of that state would look to New York for the appropriate period of limitations and would apply New York's CPLR § 213(8), which provides that actions based upon fraud must be commenced within six years of the discovery of the fraud or when it could with reasonable diligence have been discovered. In the alternative, plaintiffs submit that, if

the law of New Jersey is looked to for the limitations period, the appropriate time limit is the one applicable to general fraud actions, N.J.S.A. § 2A:14–1, which provides that such actions must be commenced within six years after the cause of action accrued.

The federal securities laws do not contain a period of limitations applicable to actions brought pursuant to section 10(b) and rule 10b–5 and federal law does not prescribe any general statute of limitations to be applied in civil actions. Consequently, a district court must look to state law to determine if an action has been timely commenced. *Berry Petroleum Company v. Adams & Peck*, 518 F.2d 402, 406 (2d Cir. 1975). Usually when federal legislation is silent as to a period of limitations, the pertinent limitations period of the state in which the court sits is applied. *Auto Workers v. Hoosier Corp.*, 383 U.S. 696, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966); *Cope v. Anderson*, 331 U.S. 461, 67 S.Ct. 1340, 91 L.Ed. 1602 (1947). The instant action, however, was commenced in the District of New Jersey and then was transferred pursuant to 28 U.S.C. § 1404 to the Western District of New York. Such transfer involves merely a change of courtroom and does not alter the substantive law to be applied to the claims of the parties. *Van Dusen v. Barrack*, 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964). In a transferred case, wherein the period of limitations is governed by state law, the statute of limitations of the state in which the transferor court sits is to be applied by the transferee court. *H. L. Green Company v. MacMahon*, 312 F.2d 650, 653 (2d Cir. 1962), *cert. denied*, 372 U.S. 928, 83 S.Ct. 876, 9 L.Ed.2d 736 (1963); *Sargent v. Genesco, Inc.*, 492 F.2d 750, 758 (5th Cir. 1974). In applying the period of limitations of the forum state (here New Jersey, the state in which the transferor court sits), reference must be made to that state's borrowing statute. *Arneil v. Ramsey*, 550 F.2d 774, 779 (2d Cir. 1977).

In the present case, plaintiffs have admitted in their memorandum of law that New Jersey does not have a borrowing statute. They urge that a choice of law analysis must nevertheless be undertaken to determine if the courts of New Jersey would apply their own period of limitations or would look to that of another state, such as New York. In a diversity case, a federal court must apply the law of the state in which it sits including its conflict of laws principles. *Klaxon Co. v. Stentor Electric Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). In addition, in a diversity action transferred from another district, the transferee court must apply the law of the state in which the transferor court sits including such state's conflict of laws principles. *Van Dusen v. Barrack, supra* ; *Glick v. Ballentine Produce, Incorporated,* 343 F.2d 839 (8th Cir.), *cert. denied,* 382 U.S. 891, 86 S.Ct. 184, 15 L.Ed.2d 149 (1965); *Harriman v. E. I. DuPont de Nemours & Co.,* 411 F.Supp. 133 (D.Del.1975). However it does not follow that, in a non-diversity action based upon section 10(b) where a federal court must look to the forum state (in this case the state of the transferor court) for the period of limitations solely because of the absence of such in the pertinent federal legislation, a conflict of laws analysis is required to be made to determine if that state would look elsewhere for an applicable period of limitations. Plaintiffs have not cited any cases to support their contrary contention.

In addition, due to the absence of a federal statute of limitations, the rights of parties to redress under section 10(b) differ from one district court to another because the states in which such courts sit place different time limits upon the bringing of suits in their own state courts alleging violations of their own state statutes. To add to the already-existing difference in treatment from state to state of non-diversity section 10(b) suits the possibility of further disparity of treatment between suits filed in a district court in the same state merely because one case is transferred to a district court in another state would increase such lack of uniformity and be unwise. There-fore, in addition to my previous finding that a conflict of laws analysis is not required to be made in a non-diversity action brought pursuant to section 10(b), I conclude that such should not be undertaken for policy reasons and that the transferor state's period of limitations should be utilized in the absence of a borrowing statute in that state.

The question now becomes which New Jersey period of limitations should be applied. New Jersey's N.J.S.A. 49:3–71, in pertinent part provides:

"(a) Any person who

&ast; &ast; &ast; &ast; &ast; &ast;

"(2) offers or sells a security by means of any untrue statement of material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading (the buyer not knowing of the untruth or omission), is liable to the person buying the security from him, who may sue to recover the consideration paid for the security, together with interest at 6% per year from the date of payment and costs, less the amount of any income received on the security, upon the tender of the security and any income received on it, or for damages if he no longer owns the security; provided, however, that the person buying the security must sustain the burden of proof that the seller knew of the untruth or omission and intended to deceive the buyer, and provided further that the buyer has suffered a financial detriment. Damages are the amount that would be recoverable upon a tender less the value of the security when the buyer disposed of it and interest at 6% per year from the date of disposition;

&ast; &ast; &ast; &ast; &ast; &ast;

"(e) No person may sue under this section more than 2 years after the contract of sale. &ast; &ast; &ast;"

The New Jersey statute of limitations said to pertain to general fraud actions, N.J.S.A. 2A:14–1, provides:

"Every action at law for trespass to real property, for any tortious injury to real or personal property, for taking, detaining, or converting personal property, for replevin of goods or chattels, for any tortious injury to the rights of another not stated in sections 2A:14–2 and 2A:14–3 of this Title, or for recovery upon a contractual claim or liability, express or implied, not under seal, or upon an account other than one which concerns the trade or merchandise between merchant and merchant, their factors, agents and servants, shall be commenced within 6 years next after the cause of any such action shall have accrued.

"This action shall not apply to any action for breach of any contract for sale governed by section 12A:2–725 of the New Jersey Statutes."

A federal district court must apply the state limitation period which the forum state would apply to the state remedy which bears the closest resemblance to section 10(b) and rule 10b–5 and which would best effectuate the purpose of the federal legislation. *Stull v. Bayard,* 561 F.2d 429, 431 (2d Cir. 1977); *Berry Petroleum Company v. Adams & Peck, supra,* at 407; *Newman v. Prior,* 518 F.2d 97, 100 (4th Cir. 1975); *Hudak v. Economic Research Analysts, Inc.,* 499 F.2d 996, 999 (5th Cir. 1974), *cert. denied,* 419 U.S. 1122, 95 S.Ct. 805, 42 L.Ed.2d 821 (1975); *Parrent v. Midwest Rug Mills, Inc.,* 455 F.2d 123, 125 (7th Cir. 1972); *Vanderboom v. Sexton,* 422 F.2d 1233, 1237 (8th Cir. 1970); *Charney v. Thomas,* 372 F.2d 97, 100 (6th Cir. 1967). In *Berry,* the United States Court of Appeals for the Second Circuit stated, at page 407:

"The most important consideration in picking a state statute of limitations to apply to rule 10b–5 actions is to compare the state causes of action to a rule 10b–5 action and to choose the statute of limitations applicable to that state cause of action which is most similar to the federal cause of action under rule 10b–5 and which best effectuates the rule's purpose. * * * In this way investors have at least as much time to sue under the federal statute as they do under the most

analogous state statute. Since the purposes of the securities law are remedial, this best effectuates the congressional policy to provide redress in federal courts for victims of securities fraud. * * * "

In *Berry,* the court had to choose between the three-year period of limitations contained in the Texas Securities Act ("the TSA") and the fraud (in a transaction involving corporate stock) provision of the Texas Business and Commerce Code ("the BCC") which the Texas courts had construed as embodying a two-year period of limitation. Article 581–33 of the TSA provided:

"A. Any person who * * * (2) Offers or sells a security * * * by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made not misleading (when the person buying the security does not know of the untruth or omission, and who in the exercise of reasonable care could not have known of the untruth or omission) is liable to the person buying the security from him * * * ."

Section 27.01(a) of the BCC provided:

"Fraud in a transaction involving real estate or stock in a corporation or joint stock company consists of a (1) false representation of a past or existing material fact, when the false representation is (A) made to a person for the purpose of inducing that person to enter into a contract; and (B) relied on by that person in entering into that contract * * * ."

The court compared and contrasted the substantive provisions of the TSA and the BCC with rule 10b–5 and concluded (noting the similarity of the languages of the two provisions) that, although neither cause of action was identical to the cause of action established by rule 10b–5, a cause of action under the TSA more closely resembled a rule 10b–5 action. It was held that the fact that the TSA only gave buyers of securities a right of action while both buyers and sellers may sue under rule 10b–5 and that the TSA explicitly imposed a duty of care

on purchasers while rule 10b–5 did not contain similar provisions (though often interpreted to include such a duty) was of little or no importance. The court further noted that the TSA provided a plaintiff-buyer with a broader cause of action than did rule 10b–5 to the degree that the TSA did not require proof of fault on the part of defendant while proof that a defendant was guilty of something between mere negligence and common law scienter in rule 10(b)–5 actions was then required in the Fifth Circuit. The court noted that the TSA was comparable to, and that the BCC differed from, rule 10b–5 in that the TSA did not require reliance by the purchaser but the BCC explicitly did, while proof of reliance in a 10b–5 action was not necessary where the alleged violation was primarily a failure to disclose material facts that a reasonable investor might have considered important in deciding whether to purchase stock. In addition, the court noted that the BCC permitted a buyer to recover the difference between the value of the stock as represented and its actual value, although damage remedies in rule 10b–5 and TSA actions were limited usually to rescission or out-of-pocket damages.

In *Newman v. Prior, supra,* the court held in a suit alleging a violation of section 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q(a), that the applicable state statute of limitations was the two-year period contained in Virginia's blue sky law rather than Virginia's five-year limitations period pertaining to actions alleging fraud that directly injured real or personal property. In so holding, the court reasoned that both the state blue sky law and section 17(a) proscribed the same conduct. (The court further opined that the two-year period was closer to the time limits on actions brought under other sections of the federal securities laws and cited authorities said to show that Congress has not favored long limitations in private civil suits under the securities laws.)

Faced with a choice between Florida's two-year period of limitations applicable to suits brought under its blue sky law and Florida's three-year limitations period for actions based on fraud in general, the court in *Hudak v. Economic Research Analysts, Inc., supra,* selected the time period pertinent to the blue sky law. The court noted that both the anti-fraud provisions of the blue sky law and rule 10b–5 are directed to false and misleading communications involving the sales of securities in similar statutory language. Moreover, in addition to this surface resemblance, the court considered the similarity between the blue sky law's and rule 10b–5's scienter requirements crucial. The court found that the elements necessary to prove a case under rule 10b–5 closely approximated those required under the blue sky law and differed materially from those applicable to Florida's common law fraud. The court recited that in such common law actions the plaintiff has the burden to show (1) a false statement of fact, (2) known by defendant to be false when made, (3) made with the purpose of inducing plaintiff's reliance thereon, and (4) plaintiff's reliance thereupon to his detriment. In contrast to the required elements of scienter and evil purpose in a common law fraud action, the court noted that Florida and other judicial interpretations then prevailing in the Fifth Circuit did not strictly require proof of such elements in actions alleging violations of securities laws.

In *Parrent v. Midwest Rug Mills, Inc., supra,* the court applied the three-year period of limitations contained in the Illinois Securities Law ("the ISL") rather than the five-year limitations period applicable to general fraud actions. In so deciding, the court noted that section 12 of the ISL covered the same violations as does rule 10b–5, that ISL's three-year time limitation was closer to the express limitation periods in various sections of the federal securities law, that selection of the time period in the ISL (rather than looking to a different Illinois statute) would enhance an orderly development of the law, and that section 137.-12 of the ISL so closely paralleled rule 10b–5 that its three-year limitation (set forth in section 137.13) would better effectuate the federal policy set forth in rule 10b–5.

The United States Court of Appeals for the Eighth Circuit held in *Vanderboom v. Sexton, supra,* that the appropriate statute of limitations for a rule 10b–5 action was the two-year period contained in section 22 of the Arkansas Securities Act ("ASA") rather than the three-year Arkansas general statute of limitations applying to any action on account, assumpsit or on the case, founded on any contract or liability, which had been judicially determined to apply to common law fraud and deceit actions. The court contrasted the statutory language, the available defenses and the required elements of proof between an ASA violation and Arkansas common law fraud with the same under a rule 10b–5 action. It was found that common law fraud in Arkansas required scienter, whereas misrepresentations under the ASA were actionable whether intentionally or negligently made, and that the local federal courts then interpreted rule 10b–5 to apply to both intentional and negligent misrepresentations. The court further noted that the ASA was specifically aimed at securities fraud and did not consider differences between the ASA and rule 10b–5—such as the fact that the statutory language of the ASA was modeled after section 12(2) of the Securities Act of 1933 and specifically created the defense of lack of knowledge or ability to know the untruth of defendant's misrepresentations, while rule 10b–5 on its face did not allow of such defenses—to outweigh the similarities in purpose and required elements of proof.

The only federal circuit court of appeals case which, when squarely faced with a choice between a limitations period provided in a state blue sky law and a state statute of limitations applicable to general fraud actions, applied the time period for general fraud actions is *Charney v. Thomas, supra.* However, the court in that case found that the Michigan blue sky law did not contain a provision similar to section 10(b) of the Securities Exchange Act, but that the private remedy provided in the Michigan statute was based upon and comparable to section 12(2) of the Securities Act. The court did note, at page 100, that "in some cases the local Blue Sky law might be the more appropriate point of reference" and that "actions under section 10(b) are not exactly the same as common law fraud actions".

It should be noted at this point that the courts in *Arneil v. Ramsey, supra; Douglass v. Glenn E. Hinton Investments, Inc.,* 440 F.2d 912 (9th Cir. 1971); *Janigan v. Taylor,* 344 F.2d 781 (1st Cir.) *cert. denied,* 382 U.S. 879, 86 S.Ct. 163, 15 L.Ed.2d 120 (1965); *Errion v. Connell,* 236 F.2d 447 (9th Cir. 1956); and *Fratt v. Robinson,* 203 F.2d 627 (9th Cir. 1953), applied the forum state's general fraud statute of limitations without discussing whether such state had a blue sky law or the possible application of a blue sky period of limitations if one existed. In addition, although the court in *Azalea Meats, Inc. v. Muscat,* 386 F.2d 5 (5th Cir. 1967), applied Florida's three-year limitations period for common law fraud to a 10b–5 action, the same court subsequently noted in *Hudak v. Economic Research Analysts, Inc., supra,* at 1000, fn. 6, that in *Azalea Meats* the parties did not raise in the district court or on appeal the issue of which time period should be applied.

In the present case, the New Jersey blue sky law is the state statute which is aimed specifically at securities fraud. Such law contains a scienter requirement by imposing upon the person buying the security the burden of proof to show that "the seller knew of the untruth or omission and intended to deceive the buyer". *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976), has ruled that scienter—to wit, intent to deceive, manipulate or defraud—is also a necessary element of a violation of section 10(b) and rule 10b–5. In addition, a plaintiff's recovery in a section 10(b) and rule 10b–5 action is usually limited to rescission or out-of-pocket damages. *Berry Petroleum Company v. Adams & Peck, supra,* at 409. The New Jersey statute appears to have the same effect by providing that a plaintiff

"may sue to recover the consideration paid for the security, together with interest at 6% per year from the date of payment and costs, less the amount of any income received on the security, upon the tender of the security and any income received on it, or for damages if he no longer owns the security * * *. Damages are the amount that would be recoverable upon a tender less the value of the security when the buyer disposed of it and interest at 6% per year from the date of disposition * * *."

Although the New Jersey law only creates a cause of action for buyers of securities, while both buyers and sellers may sue under section 10(b) and rule 10b–5, the United States Court of Appeals for the Second Circuit has deemed such a difference not important where, as here, the court is dealing with a suit by buyers. *Berry Petroleum Company v. Adams & Peck, supra,* at 408.

■ Plaintiffs have conceded in their memorandum of law that the language of the New Jersey blue sky law is virtually the same, and proscribes basically the same conduct, as section (b) of rule 10b–5. However, plaintiffs argue that the New Jersey law is not directed at the conduct that is proscribed by sections (a) or (c) of the rule—to wit, the use of manipulative and deceptive devices, schemes or artifices to defraud or the performance of any act, practice or course of business which operates as a fraud or deceit upon any person in connection with the purchase or sale of any security. Although it is true that a rule 10b–5 action is broader than one that could be brought pursuant to New Jersey's blue sky law, I do not find that such requires the application of New Jersey's statute of limitations for general fraud. The policy of the federal securities laws would best be effectuated by applying New Jersey's two-year period of limitations pertaining to securities fraud rather than its six-year time limitation applicable to fraud actions in general because New Jersey's blue sky law is specifically directed to securities fraud in language virtually identical to section (b) of rule 10b–5 and the elements of the state and federal causes of action include scienter.

■ Although state law fixes the length of the limitations period, federal law determines when the period begins to run. *Stull v. Bayard, supra; Arneil v. Ramsey, supra; Moviecolor Limited v. Eastman Kodak Company,* 288 F.2d 80 (2d Cir.), cert. denied, 368 U.S. 821, 82 S.Ct. 39, 7 L.Ed.2d 26 (1961). In a fraud action, the period of limitations does not begin to run until the fraud is either known or should have been discovered by the exercise of reasonable diligence. *Klein v. Shields & Company,* 470 F.2d 1344 (2d Cir. 1972); *Klein v. Bower,* 421 F.2d 338 (2d Cir. 1970). Plaintiffs have the burden of showing that they exercised reasonable care and diligence to discover the alleged fraud. *Hupp v. Gray,* 500 F.2d 993 (7th Cir. 1974); *Morgan v. Koch,* 419 F.2d 993 (7th Cir. 1969). Plaintiffs allege in their complaint that they could not have discovered the alleged fraud sooner because such was fraudulently concealed by defendants. *See, Holmberg v. Armbrecht, supra; Bailey v. Glover,* 88 U.S. (21 Wall.) 342, 22 L.Ed. 636) (1875). Such an allegation of fraudulent concealment has been held sufficient to withstand a motion to dismiss. *Puttkammer v. Stifel, Nicholaus & Company, Inc.,* 365 F.Supp. 495 (N.D.Ill.1973); see, also, *Mooney v. Tallant,* 397 F.Supp. 680 (N.D.Ga.1975). In *Vanderboom v. Sexton, supra,* at 1241, the court on a motion for summary judgment held that it was not possible to determine whether the statute of limitations would bar the action until the issue on what date the alleged fraud was discovered or should have been discovered was decided at trial. Furthermore, whether defendants did or did not conceal their alleged fraudulent scheme and whether plaintiff could or could not have discovered the alleged fraud sooner is a material issue of fact which cannot be determined on a motion to dismiss on which plaintiff's allegations must be accepted as true. *Cowsar v. Regional Recreations, Inc., supra,* at 398. Therefore, defendants' motion to dismiss plaintiffs' claims based on section 10(b) and rule 10b–5 are hereby denied at this time. Defendants may reinstate this motion if

plaintiffs' evidence fails to show that they did not know and could not have known by the exercise of due diligence of the alleged fraud prior to two years before the commencement of the instant action.

■ Dominion also moves to dismiss plaintiffs' claims predicated upon section 10(b) and rule 10b–5 on the ground that plaintiffs have not purchased or sold securities in connection with the alleged fraudulent conduct. It is settled that in such an action plaintiffs must allege and prove that they either purchased or sold securities in connection with the alleged fraud. *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975); *Birnbaum v. Newport Steel Corp.*, 193 F.2d 461 (2d Cir.), *cert. denied*, 343 U.S. 956, 72 S.Ct. 1051, 96 L.Ed. 1356 (1952). Dominion asserts that some plaintiffs may have purchased some of their securities prior to some acts which allegedly were fraudulent and hence they did not purchase in connection with the alleged fraudulent conduct. Such contentions are directed to matters of proof which cannot be disposed of on a motion to dismiss. The complaint satisfies the pleading requirements of a section 10(b) and rule 10b–5 action. Dominion's motion to dismiss on this ground is therefore and hereby denied.

Dominion's motions to dismiss pursuant to Fed.R.Civ.P. rules 8(a) and 10(b) for failure to state separately and number each separate claim asserted, for failure to identify the particular plaintiff or plaintiffs asserting a particular claim and the capacity in which he or she or they are asserting such claim, and for failure to identify the particular defendants against whom a particular claim is asserted are hereby denied. In addition, Dominion's motions pursuant to Fed.R.Civ.P. rules 12(b)(6) and 12(e) to dismiss the complaint on the ground that the allegations therein are so vague and ambiguous that Dominion cannot reasonably be required to frame a responsive pleading and to dismiss the pendent state causes of actions for negligence, breach of fiduciary duty, and breach of contract in the Fourth Count for failure to state a claim upon which relief can be granted are hereby denied.

Marine moves pursuant to Fed.R.Civ.P. rule 12(b)(6) to dismiss the complaint as to it for failure to state a claim upon which relief can be granted under sections 11 and 12(2) of the Securities Act of 1933 and section 10(b) of the Securities Exchange Act of 1934 and rule 10b–5. It also moves pursuant to Fed.R.Civ.P. rule 56(b) for summary judgment dismissing plaintiffs' claims because they are barred by the applicable statute of limitations or, in the alternative, pursuant to rule 12(b)(6) to dismiss the complaint for failure affirmatively to allege compliance with the applicable statute of limitations. In addition, Marine moves pursuant to Fed.R.Civ.P. rules 9(b) and 12(e) for dismissal on the ground that the allegations in the complaint as to Marine's alleged role and participation in the alleged fraud are so vague and ambiguous that Marine cannot reasonably be expected to frame a responsive pleading or, in the alternative, to require plaintiffs to state with particularity Marine's alleged role and participation in the alleged fraudulent conduct.

As previously stated in this opinion, plaintiffs' section 11 claims have been dismissed as untimely, and with respect to plaintiffs' claims based upon section 12(2) arising from sales of securities occurring within three years of the commencement of the instant action plaintiffs have been granted leave to amend their complaint to allege compliance with the one-year period of limitations contained in section 13. These same rulings apply to the similar motions made by Marine.

At this point in the litigation (prior to discovery), plaintiffs have stated their claim against Marine with sufficient clarity to enable Marine to frame a responsive pleading and plaintiffs cannot be required to state Marine's alleged participation in the alleged fraud with any more specificity than is alleged in the complaint. Therefore, Marine's motions based upon rules 9(b) and 12(e) are hereby denied.

■ The Second Count of plaintiffs' complaint alleges that Marine aided and

abetted and participated in the alleged fraudulent conduct. The crux of Marine's motion to dismiss is that aiding and abetting liability does not exist under sections 11 and 12(2) of the Securities Act of 1933 and section 10(b) of the Securities Exchange Act of 1934, or, in the alternative, that plaintiffs have failed to state a claim under sections 11 [13] and 12(2) because they have failed to allege that Marine participated in the sales of the securities or under section 10(b) because they have failed to allege that Marine had an intent to deceive, manipulate or defraud and have failed to allege sufficiently that Marine substantially assisted in the alleged fraudulent conduct.

It is settled that a party who has actively participated in the sale of securities as an aider and abettor or as a conspirator may be liable under section 12(2) of the Securities Act of 1933. *Katz v. Amos Treat & Co., supra; Lorber v. Beebe*, 407 F.Supp. 279 (S.D.N.Y.1975); *Sandusky Land, Ltd. v. Uniplan Groups, Inc.*, 400 F.Supp. 440 (N.D. Ohio 1975). In *In re Caesars Palace Securities Litigation, supra*, at 383, the court stated:

"Persons participating directly in a violation of the statute will not escape liability under the express language of the Act; similarly, those persons who are aware of and, to some lessor degree, participate in a violation of the securities laws and either enter into an agreement with or give assistance to the primary wrongdoers should not be permitted to escape the imposition of liability."

The Second Count, wherein plaintiffs allege that Marine aided and abetted and participated in the alleged violations of section 12(2), sets forth that Marine had a close relationship with Dominion in that various officers and trustees of Dominion were former officers and employees of Marine and a former trustee of Dominion subsequently became an officer of Marine. Plaintiffs allege that Marine acted as the lead or agent bank for other banks and that

Marine knew or should have known of the alleged plan, scheme and device to defraud Dominion's investors. Paragraph 6 of the Second Count alleges that "[t]he lending banks, through Marine Midland-Western as agent, knew of the wrongful conduct engaged in by Dominion and its controlling persons, and rendered substantial aid and assistance in this wrongful conduct; and thus was [sic] an aider and abetter in all of the wrongful conduct of defendant Dominion, and participated in a conspiracy with Dominion, as a result of which the bondholders and other investors in Dominion were defrauded". It is alleged that Marine secured preferred participation in various loans made to Dominion to the detriment of Dominion's subordinated debenture holders and that adequate disclosure of such arrangement was never made to the investors. Furthermore, plaintiffs allege that Marine actively supervised Dominion's loan portfolios. In this role, it is alleged that Marine reviewed all of Dominion's investments and became privy to the allegedly concealed problems relating to improper engineering and construction, improper construction disbursements and unsatisfactory project performance. Moreover, the complaint alleges that Marine knew that Dominion failed to establish adequate reserves and disbursement controls on loans, and improperly credited income. In addition, it is alleged that Marine knew that there were other business relationships between and among the recipients of the mortgage proceeds and Dominion's controlling persons and that Dominion had recast various loans to avoid divulging that they were in default.

Accepting these allegations as true (as I must on a motion to dismiss), they are sufficient to set forth a claim under section 12(2) against Marine as an aider and abettor. The complaint sufficiently alleges that Marine actively participated in the alleged violations and provided substantial aid and assistance in the alleged wrongful conduct.

---

**13.** Because plaintiffs' section 11 claims have been dismissed heretofore as untimely, it is unnecessary to reach the issue of whether aiding and abetting liability exists under section

11 or, if it does, whether plaintiffs have affirmatively alleged participation in the sales of securities. Consequently, I intimate no opinion on these issues.

It is also true that a person may be secondarily liable under section 10(b) of the Securities Exchange Act of 1934 and rule 10b–5 as an aider and abettor, a conspirator, or a substantial participant in fraud perpetrated by others. *Lanza v. Drexel & Co.*, 479 F.2d 1277 (2d Cir. 1973) (*en banc*). The parties agree that, in order to state a claim for aiding and abetting liability under section 10(b), a complaint must allege the existence of independent fraudulent conduct, knowledge of the fraudulent conduct, intent to further that fraud (scienter), and the giving of substantial assistance to the primary wrongdoer. It should be noted that in order to establish such aiding and abetting liability, plaintiffs must prove that Marine had knowledge of the fraud and not merely knowledge of the undisclosed material facts and that Marine actively participated in the alleged wrongful transactions. *Murphy v. McDonnell & Co., Inc.*, 553 F.2d 292, 295 (2d Cir. 1977); *Hirsch v. du Pont*, 553 F.2d 750, 759 (2d Cir. 1977).

Marine contends that plaintiff's complaint fails to allege sufficiently that Marine had knowledge of the fraud, that it intended to deceive, manipulate, or defraud Dominion's investors, and that it provided substantial assistance to Dominion. On a motion to dismiss, a complaint cannot be dismissed unless it is clear that plaintiffs could prove no set of facts which would entitle them to relief. Applying this standard to the instant complaint, plaintiffs have stated a cause of action against Marine for secondary liability under section 10(b) and rule 10b–5. Plaintiffs' complaint

sufficiently alleges that Marine knew of the alleged wrongful conduct of Dominion and gave substantial assistance to the alleged fraudulent conduct. It should be noted that aiding and abetting liability may be imposed where the assistance given consists of mere silence or inaction. *Kerbs v. Fall River Industries, Inc.*, 502 F.2d 731 (10th Cir. 1974). Whether the assistance alleged to have been given by Marine is sufficient to impose liability for aiding and abetting is a factual issue which cannot be determined on a motion to dismiss. Furthermore, although the complaint does not state the magic words "intent to deceive, manipulate, or defraud", the allegations therein when read *in toto* are sufficient to allege that Marine intentionally acted or refrained from action to further the alleged fraud. Therefore, Marine's motion to dismiss plaintiffs' section 12(2) and section 10(b) claims against it for failure to allege sufficient facts to set forth a claim of aiding and abetting is hereby denied.

■ Plaintiffs move for the appointment of special counsel or, in the alternative, for the appointment of a receiver to protect the assets of Dominion.[14] Plaintiffs seek the appointment of special counsel to investigate and file a report concerning the advisability of (1) instituting Chapter 10 or 11 proceedings on behalf of Dominion, (2) raising various defenses in connection with pending litigation involving lending banks, and (3) bringing affirmative law suits against Dominion's trustees and controlling persons. Plaintiffs have conceded that the

---

14. Plaintiffs also moved for injunctive relief in the same motion to compel Dominion to file its 10–K report and financial statements for the fiscal year ending May 31, 1976 and to file the quarterly reports required by the Securities Exchange Act of 1934. By affidavit dated February 2, 1977 James J. Maloney, Esq., attorney for Dominion, stated that Dominion filed the reports and statements referred to in the notice of motion prior to the date on which such motion was noticed. Such affidavit recites that "Dominion filed its annual report on Form 10–K, which omitted certain required items, by letter dated August 30, 1976 to the SEC. Dominion filed the omitted items, including Dominion's financial statements for the year ended May 31, 1976, on Form 8 as Amendment No.

1 to Dominion's annual report on Form 10–K by letter dated November 9, 1976 to the SEC which was receipted by the SEC on November 11, 1976. Dominion filed its quarterly report for the quarter ended August 31, 1976 on Form 10–Q by mail on November 4, 1976 which was receipted by the SEC on November 8, 1976. I mailed copies of these reports to Mr. Landy on December 2, 1976." Subsequent to plaintiffs' initial memorandum of law, submitted with their notice of motion, plaintiffs have not addressed this aspect of their motion in any memorandum of law, affidavit or at oral argument, but have not withdrawn such requested relief. It appearing that the required items have been filed, the injunctive relief requested by plaintiffs is hereby denied as moot.

appointment of special counsel to investigate serious allegations of misconduct requires a clear showing that such extraordinary equitable relief is necessary. *See, Securities & Exchange Com'n v. Manor Nursing Ctrs., Inc.*, 458 F.2d 1082 (2d Cir. 1972). Nevertheless, in their reply memorandum of law, plaintiffs unpersuasively argue that "a special counsel would best serve the equitable needs present in this case" because such special counsel could (1) determine if Dominion concealed massive loan defaults and recasted loans to conceal losses and when the controlling persons in Dominion knew of and concealed loan portfolio problems, (2) review records and correspondence to reconstruct loan histories and compare them with the information contained in Dominion's prospectuses, (3) investigate affiliations between Dominion's managers and borrowers who defaulted and (4) determine whether Dominion is in the process of self-liquidation. These inquiries which a special counsel could allegedly perform can in the present case be adequately performed by plaintiffs' counsel through the discovery process and the determinations which a special counsel is said to be able to make go directly to the merits of the alleged fraud and can only be made after a trial. Plaintiffs have thus not made the required clear showing that the extraordinary relief of appointment of special counsel is warranted in the instant case.

Similarly, the appointment of a receiver is an extraordinary form of equitable relief in a private securities fraud action. A request for such relief, although addressed to the sound discretion of the court, should only be granted upon a clear and satisfactory showing that such relief is necessary to prevent the future dissipation of trust assets by its controlling persons. *Leighton v. One William Street Fund, Inc.*, 343 F.2d 565 (2d Cir. 1965); *Ferguson v. Tabah*, 288 F.2d 665 (2d Cir. 1961). Plaintiffs contend that the alleged past fraudulent conduct on the part of Dominion's management and the alleged insolvency of Dominion justify the appointment of a receiver to preserve the remaining assets of Dominion and to prevent any possible future dissipation of assets or corporate waste. It is significant that the reasons asserted by plaintiffs in support of their application for a receiver are as yet merely unproven allegations of wrongdoing and unsubstantiated claims of insolvency. The contentions in plaintiffs' memoranda of law and the facts alleged in plaintiffs' counsel's affidavit do not satisfy the heavy burden placed upon plaintiffs to demonstrate clearly the necessity for the appointment of a receiver to prevent future dissipation or waste of trust assets. Therefore, plaintiffs' motion for the appointment of a special counsel or, in the alternative, for the appointment of a receiver is hereby denied.

Defendants Gross and David served by mail pursuant to Fed.R.Civ.P. rule 30(b) their notice to take depositions November 23, 1976 in which they scheduled four depositions for December 2 and 3, 1976. Plaintiffs' counsel by affidavit stated that he did not receive such notice until November 26, 1976. Plaintiffs have moved for a protective order pursuant to Fed.R.Civ.P. rule 26(c) to stay the taking of depositions or, in the alternative, that such depositions be taken on specified terms and conditions. It is alleged that defendants' scheduling of such depositions was oppressive, unduly burdensome and not made upon reasonable notice. By affidavit, plaintiffs' counsel stated that the originally scheduled depositions had been adjourned by consent of all parties and had been rescheduled for January 24, 26 and 27, 1977. However, it appears that a misunderstanding arose between counsel concerning the sequence in which plaintiffs' depositions would be taken. Defendants' counsel by letter dated November 22, 1976 had indicated that upon reasonable notice the particular order of the taking of depositions could be altered to minimize the inconvenience of the parties. By letter dated December 30, 1976, plaintiffs' counsel proposed that the depositions of the plaintiffs be taken in the order their names appeared in the caption of the complaint. Defendants' counsel insisted that the original sequence in the notice to take depositions be held intact and merely shift-

ed backwards. Defendants have cross-moved pursuant to Fed.R.Civ.P. rule 37(d) for sanctions and for security for costs because of plaintiffs' actions and failure to attend the scheduled depositions.

.The passage of time since plaintiffs filed their motion for a protective order has altered somewhat the posture of such motion and the grounds asserted therein for entry of such order. The dates upon which the depositions were originally scheduled and rescheduled have passed and the motions to dismiss have now been disposed of. It should nevertheless be observed that defendants' notice to take depositions was served with an unreasonably short period of time and at a time when the parties' efforts were primarily being directed to a motion for change of venue and numerous motions to dismiss. Because of this, plaintiffs' action in seeking a protective order was not unreasonable. Furthermore, the subsequent problems which developed concerning the scheduling ·of depositions cannot be attributed to flagrant or bad faith conduct on the part of either counsel for plaintiffs or defendants. Therefore, plaintiffs' motion for a protective order and defendants' motion for sanctions and for security for costs are hereby denied. The parties are directed to proceed from this point forward with all aspects of discovery in a reasonable and proper fashion and it is hereby ordered that the depositions of the four persons [15] named in the November 23, 1976 notice to take depositions be taken prior to deposing anyone else.

By notice dated January 10, 1977, plaintiffs pursuant to Fed.R.Civ.P. rule 34 requested that Dominion produce "all books, records, documents, correspondence, appraisals, reports and all other files and documented material relating .to the loans described in the November 15, 1973 Prospectus of Dominion Mortgage & Realty Trust, and listed on pages 16 and 17 * * ". On February 10, 1977, Dominion served its response to this request and refused to produce such documents on the grounds that the documents are irrelevant because the complaint allegedly is only based on nine loans, does not explicitly refer to the November 15th prospectus and does not show that any plaintiffs purchased in reliance upon such prospectus, that such request is burdensome because many of the loans are not described with particularity and that the request is premature in light of the then pending motions to dismiss and plaintiffs' motion for a protective order. Plaintiffs have moved pursuant to Fed.R.Civ.P. rule 37(a)(2) to compel the production of the documents requested and pursuant to Fed. R.Civ.P. rule 37(a)(4) for costs. Dominion has cross-moved for a protective order.

I find that the documents requested are relevant, that the reason asserted by Dominion in support of its contention that such request is burdensome is insufficient and that the asserted ground of untimeliness is no longer valid. Therefore, plaintiffs' motion to compel production of the documents requested is granted, and Dominion's cross-motion for a protective order is denied. Dominion is hereby ordered to produce such documents for inspection by plaintiffs, but need not do so until the four individuals named in the November 23, 1976 notice have in fact been deposed.

Subsequent to the matters herein being submitted to the court for determination and on June 28, 1977, Dominion filed a petition in bankruptcy under Chapter 11 of the Bankruptcy Act, 11 U.S.C. §§ 701 *et seq.* Bankruptcy rule 11–44 provides that the filing of such a petition "shall operate as a stay of the commencement or the continuation of any court or other proceeding against the debtor * * *". Such bankruptcy rule is directed against *parties* to a court or other proceeding and does not provide for notice to a *court* before which the proceedings are being conducted. Rule 11– 44, therefore, does not operate to stay a court from determining matters *sub judice* prior to filing of a petition in bankruptcy. However, because the rule does stay a party from continuing an action against the debtor, this court's orders and directions herein

---

**15.** Plaintiffs Brick, Goldberg, Polston and Slotkin.

that plaintiffs file an amended complaint to prevent dismissal of their section 12(2) claims and with respect to discovery are hereby stayed.

So ordered.