In re Daniel H. **OVERMYER**, Debtor.

The **FIRST NATIONAL BANK OF BOSTON** and **D.H. Overmyer Telecasting Company, Inc.**, Plaintiffs-Respondents,

v.

Daniel H. **OVERMYER**, Defendant-Movant.

Bankruptcy No. 82 B 20329.
Adv. No. 83 ADV 6041.

United States Bankruptcy Court, S.D. New York.

Aug. 25, 1983.

---

Reich & Reich, White Plains, N.Y., for debtor.

Weil, Gotshal & Manges, New York City, for plaintiffs-respondents.

### DECISION ON MOTION BY DEBTOR TO DISMISS COMPLAINT

HOWARD SCHWARTZBERG, Bankruptcy Judge.

This case involves the application of the automatic stay under Code § 362(a) to a

decision and judgment entered by another bankruptcy court, in a multiparty action in the Northern District of Ohio, after one of the parties in that case filed a Chapter 7 petition in this court subsequent to that trial, but before the decision and judgment were entered by the bankruptcy court.

The debtor in this Chapter 7 case, Daniel H. Overmyer, has moved to dismiss for failure to state a claim twenty-four of the twenty-six counts in the complaint filed by the plaintiffs, First National Bank of Boston ("FNBB") and D.H. Overmyer Telecasting Company, Inc. ("Telecasting"). The complaint objects to the discharge of the debtor and to the dischargeability of his debts owed to FNBB and Telecasting. The debtor reasons that the decision and judgment entered by the Bankruptcy Court for the Northern District of Ohio are void and cannot support the plaintiffs' complaint in this case, either as res judicata or collateral estoppel, because the post-trial Chapter 7 petition that the debtor thereafter filed with this court automatically stayed the Bankruptcy Court for the Northern District of Ohio from entering such decision and judgment.

The multiparty action in the Bankruptcy Court in the Northern District of Ohio arose out of a Chapter 11 case filed by Hadar Leasing International Co. ("Hadar"). The Hadar debtor sought relief from the automatic stay imposed in favor of Telecasting, which was then another Chapter 11 debtor. The debtor in the instant case, Daniel H. Overmyer, intervened in the Ohio multiparty action as a plaintiff after FNBB had intervened as a defendant and had counterclaimed against the various plaintiffs who were allegedly controlled by the individual plaintiff-intervenor, Daniel H. Overmyer. The multiparty action was held over a period between February and April, 1982, involving approximately 6000 pages of transcript and 2000 exhibits. Closing arguments were concluded on May 24, 1982. Four days later, on May 28, 1982, the individual debtor, Daniel H. Overmyer, filed with this court his petition for relief under Chapter 7 of the Bankruptcy Code.

On September 24, 1982, the Ohio Bankruptcy Court entered its lengthy decision and judgment in the Hadar case, reported as *In re D.H. Overmyer Telecasting Co., Inc.,* 23 B.R. 823–939 (Bkrtcy.N.D.Ohio 1982). A portion of the judgment reads as follows:

It is hereby declared that, by reason of the fraud perpetrated on FNBB by the plaintiffs and related Overmyer entities, FNBB has equitable liens and constructive trusts upon the assets controlled by Mr. Overmyer that have been used as instruments of fraud, to the full extent of the debts owed to FNBB by DHO, ODS, TOC and Mr. Overmyer for which debts the plaintiffs Hadar, Mr. Overmyer, DHO and ISLI are jointly and severally liable to the defendant FNBB in the following amounts which are cumulative:

(a) $11,723,754.53 plus interest at the prime rate of FNBB as from time to time established plus 3% with a minimum of 9% since April 1, 1982;

(b) $171,947.76 plus interest at the prime rate of FNBB as from time to time established plus 2% since April 1, 1982;

(c) $6,230,742.07 plus interest at the prime rate of FNBB as from time to time established plus 1% with a minimum of 6% since April 1, 1982;

(d) $4,267,330.91 plus interest for costs of collection.

23 B.R. at 937. The judgment is currently being appealed by the debtor to the United States District Court for the Northern District of Ohio.

The plaintiffs' complaint contains twenty-six claims objecting to the debtor's discharge and to the dischargeability of his debts pursuant to various subsections under Code §§ 727 and 523. Some of the claims in the complaint refer to the Ohio Bankruptcy Court's decision and judgment in the *Hadar Leasing* case which hold the debtor liable to the plaintiffs by reason of various fraudulent transactions and conduct. A copy of the *Hadar* decision and judgment, as reported at 23 B.R. 823, was annexed to the complaint.

*The Hadar Decision and Judgment*

Central to the debtor's argument is the contention that any decision or judgment entered by any court after the debtor filed his Chapter 7 petition with this court is null and void as to him and may not support a complaint objecting to his discharge and to the dischargeability of his debts. The debtor relies upon the automatic stay of "the commencement or continuation ... of a judicial, administrative, or other proceeding against the debtor that was ... commenced before the commencement of the case under [the Bankruptcy Code] ...." 11 U.S.C. § 362(a)(1). As stated in the legislative history, the automatic stay gives a debtor "a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy." H.R.Rep. No. 595, 95th Cong., 1st Sess. 340 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 49 (1978); *reprinted in* 1978 Code Cong. & Ad.News 5787, 5963, 6296. The applicability of Code § 362(a)(1) depends upon whether the judgment entered against Daniel H. Overmyer, based upon the FNBB and Telecasting counterclaims in that case, would defeat the purpose expressed in the legislative history. The plaintiffs argue that the automatic stay did not prevent the Ohio Bankruptcy Court from entering its decision and judgment against the debtor, who was one of several parties to the multiparty action. The plaintiffs reason that the automatic stay applies to parties and does not operate to stay a court from determining matters *sub judice* prior to the filing of a petition in bankruptcy. This position was accepted by the courts in the interpretation of former Bankruptcy Rule 11–44 as it applied under the now repealed Bankruptcy Act of 1898. *E.g., Brick v. Dominion Mortgage and Realty Trust,* 442 F.Supp. 283, 309 (W.D.N.Y. 1977). However, there remains for consideration whether the rule in *Brick* still obtains after the adoption of the Bankruptcy Code and the very broad injunctive relief that is now reflected in Code § 362.

The plaintiffs cite *In re Willard,* 15 B.R. 898, 900 (Bkrtcy.App. 9th Cir.1981), where a Bankruptcy Appellate Panel ruled that "the court would not have the jurisdiction to void a judgment where the judgment results *solely* from a court entering a judgment and the judgment is challenged on automatic stay grounds." The Bankruptcy Appellate Panel concluded that under Code § 362(a), the automatic stay is applicable to all "entities" and that the term "entity," as defined in Code § 101(14) includes persons, trusts and governmental units, but not courts. Therefore, the Bankruptcy Appellate Panel ruled that a divorce court's postpetition divorce judgment that awarded a family residence to the nondebtor wife was valid as between the parties and was not stayed by Code § 362, but was ineffective against the bankruptcy estate to the extent that the judgment affected property of the estate.

The dictum in the *Willard* case, *supra,* that the term "entities" does not include courts, and that courts are not bound by the automatic stay provisions of Code § 362, has been rejected by several courts of appeals. In *Association of St. Croix Condominium Owners v. St. Croix Hotel Corp.,* 682 F.2d 446, 449 (3d Cir.1982), it was held that the automatic stay prevents the Third Circuit Court of Appeals from proceeding with an appeal when after the briefs had been filed, the party against whom the action had originally been brought filed a petition under Chapter 11 of the Bankruptcy Code. The Third Circuit Court of Appeals then stayed the appeal and also directed the district court to respect the automatic stay. Thereafter, the bankruptcy court granted relief from the automatic stay *nunc pro tunc,* with the result that the Third Circuit Court of Appeals then heard the appeal on the merits and affirmed the district court's decision. *Association of St. Croix Condominium Owners v. St. Croix Hotel Corp.,* 690 F.2d 367 (3d Cir.1982).

In *Ellison v. Northwest Engineering Co.,* 707 F.2d 1310, 1311 (11th Cir.1983), the Eleventh Circuit Court of Appeals similarly ruled that it was "bound by the automatic

stay provision of 11 U.S.C. § 362(a)(1)." In that case, the parties had filed briefs and the panel had heard oral argument when, prior to the court's decision, the appellee filed a petition under Chapter 11 of the Bankruptcy Code. The court then stayed all proceedings and directed the parties to inform the court when the bankruptcy court granted relief from the stay or when the stay had lapsed, at which time the Eleventh Circuit Court of Appeals would release its decision.

There is no question that under 28 U.S.C. § 1481[1] a bankruptcy court may not enjoin another court. However, the broad injunctive restraint imposed under Code § 362(a) does not emanate from the bankruptcy court; it arises out of an act of Congress, as reflected in the Bankruptcy Code. This point was recognized by the Third Circuit and Eleventh Circuit Courts of Appeals in the *St. Croix* and *Ellison* cases, *supra,* when these courts ruled that they were "bound by the automatic stay provision of 11 U.S.C. § 362(a)(1)." *Ellison v. Northwest Engineering Co.,* 707 F.2d at 1311.

■ In the instant case, the judgment of the Ohio Bankruptcy Court is not final because it is presently being appealed by the debtor to the United States District Court for the Northern District of Ohio. Therefore, it cannot presently serve as res judicata or collateral estoppel with respect to the plaintiffs' objections to the debtor's discharge and to the dischargeability of his debts. If the Ohio judgment is sustained on appeal and ultimately becomes final, this court would then entertain an application for *nunc pro tunc* relief from the stay for its use in this case. Manifestly, it would not further the concept of judicial economy to disregard the 6000 pages of transcript and the 2000 exhibits that were employed during six weeks of a trial that took place before any automatic stay came into effect. A final judgment (if it is ultimately sustained on the merits) should not be lightly

regarded merely because the case was *sub judice* at the time one of the plaintiffs filed a bankruptcy petition. This is especially so when the judgment is in favor of a defendant on a counterclaim against the debtor-plaintiff who originally sought affirmative relief, as distinguished from the situation in the *St. Croix* and *Ellison* cases, *supra,* where the debtors were defendants against whom the suits were brought.

■ The action in the Ohio Bankruptcy Court was not originally brought "to recover a claim against the debtor" within the meaning of Code § 362(a)(1). It was only after the debtor intervened as a plaintiff in the Ohio Bankruptcy Court action that the defendants, FNBB and Telecasting (the plaintiffs in this case) asserted counterclaims against the debtor for fraudulent conduct involving property of the corporate debtor in that case. Where a debtor seeks affirmative relief as a plaintiff in a lawsuit and then invokes the protection of the automatic stay on a counterclaim, the situation warrants very careful scrutiny. In such instance, a court must be cautious to avoid a decision which would convert Code § 362 from a shield into a weapon. A debtor should not be permitted to reap the benefits of litigation in one court, but circumvent the burdens in another forum. *Bohack Corp. v. Borden, Inc.,* 599 F.2d 1160, 1168 (2d Cir.1979). In the *Bohack* case, the Second Circuit held that a bankruptcy court abused its discretion by ruling that the non-debtor defendant, Borden, Inc., was bound by the automatic stay imposed under former Bankruptcy Rule 11–44 and was enjoined from litigating its antitrust counterclaim interposed in response to the debtor's antitrust complaint filed in the United States District Court for the Eastern District of New York. *Id.* at 1169. A non-debtor defendant against whom a debtor plaintiff has fully tried a suit in another forum should be free to assert and obtain a ruling on whatever counterclaims might be

---

**1.** Powers of Bankruptcy Court.

A bankruptcy court shall have the powers of a court of equity, law, and admiralty, but *may not enjoin another court* or punish a criminal

contempt not committed in the presence of the judge of the court or warranting a punishment of imprisonment. (emphasis added)

available to the nondebtor defendant. *See In re Ideal Roofing & Sheet Metal Works, Inc.,* 9 B.R. 2, 3 (Bkrtcy.S.D.Fla.1980) (automatic stay modified to permit defendant to assert counterclaim against debtor plaintiff in state court proceeding). This is not to say that the nondebtor defendant should then be allowed to enforce the judgment on the counterclaim in violation of Code § 362(a).

The trial of the issues in the Ohio Bankruptcy Court was concluded before the imposition of the automatic stay. All of the witnesses, exhibits and parties in that case were in no way affected by the automatic stay that applied after the debtor filed his bankruptcy petition with this court. There was nothing further to be done by the parties except await the court's decision. Indeed, the court's decision alone did not affect the debtor or the property of his estate. However, since the Ohio Bankruptcy Court's decision is not final, it serves no precedential purpose at this time. Thus, the debtor's motion addressed to the sufficiency of the complaint will be considered independently of that decision and unencumbered by concepts of res judicata and collateral estoppel.

### The Complaint

Under Federal Rule of Civil Procedure 12(b)(6), a complaint must be dismissed if it fails to state a claim upon which relief can be granted. Very little is required in a complaint as long as it sets forth the basis upon which relief is sought. *Dioguardi v. Durning,* 139 F.2d 774 (2d Cir.1944); *Mathews v. Kilroe,* 170 F.Supp. 416 (S.D.N.Y.1959); *In re Turk,* 1 B.R. 771 (Bkrtcy.S.D.N.Y.1980). A complaint should not be dismissed "unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). All of the well-pleaded material facts alleged in the complaint must be taken as admitted for purposes of this motion. *In re Turk,* 1 B.R. at 773.

Telecasting and FNBB asserted in their complaint against Overmyer twenty-six claims for relief. The first seventeen claims seek a denial of discharge under Code § 727. The remaining nine claims object to the dischargeability of certain debts owed Telecasting and FNBB under Code § 523. The claims allege that Overmyer:

1) Concealed his or his estate's equitable interests in several corporations, referred to collectively as the "Overmyer Companies," with intent to defraud his creditors and within one year preceding the filing of his petition, May 29, 1982;

2) Swore a false oath in executing his bankruptcy petition which omitted these equitable interests;

3) Knowingly listed false debts owed to the Overmyer Companies in his schedules of debts;

4) Concealed information concerning the Overmyer Companies, alleged insiders of Overmyer, by presenting falsified records of these companies to the Ohio Bankruptcy Court (the Ohio court) within one year preceding the filing date;

5) Concealed information concerning the Overmyer Companies by presenting back-dated records regarding these companies to the Ohio court within one year preceding the filing date;

6) Destroyed, mutilated or failed to keep records of the Overmyer Companies within one year preceding the filing date;

7) Filed at least one false affidavit with the Ohio court;

8) Prosecuted fraudulent claims in the Ohio court within one year preceding the filing date;

9) Wrongfully withheld books, documents, records and papers relating to the property and financial affairs of Hadar and Telecasting in the Ohio proceedings;

10) Fraudulently transferred property of the estates of Hadar and Telecasting;

11) Refused to obey an order of the Ohio court directing Overmyer to turn over as-

sets and records of some or all of the Overmyer Companies;

12) Disobeyed discovery orders of the Ohio court within one year preceding the filing date;

13) Refused to turn over property of Hadar's estate to either Hadar or the trustee of Hadar within one year preceding the filing date;

14) Removed and concealed money of a public company, a controlling interest in which is property of the estate of Telecasting, by means of fraudulent service agreements;

15) Transferred $15,000 to a trust in payment of an interest obligation which was nonexistent;

16) Offered no satisfactory explanation of losses of assets and deficiencies of assets to meet liabilities;

17) Concealed, destroyed, mutilated, falsified or failed to keep records pertaining to his financial condition or business transactions;

18) Committed fraud or defalcation in connection with his fiduciary responsibilities to Telecasting, resulting in damage to FNBB;

19) Committed fraud or defalcation in connection with his fiduciary responsibilities to Telecasting, resulting in damage to Telecasting;

20) Committed embezzlement or larceny against FNBB;

21) Committed embezzlement or larceny against Telecasting; .

22) Willfully and maliciously injured Telecasting causing damage to FNBB;

23) Willfully and maliciously injured Telecasting causing damage to Telecasting;

24) Obtained money, property, services or credit extension, renewal or refinancing from FNBB through false statements concerning the financial condition of Overmyer or the Overmyer companies;

25) Obtained money, property, etc. from FNBB by false pretenses, a false representation or actual fraud; and

26) Obtained money, property, etc. from Telecasting by false pretenses, a false representation or actual fraud.

Overmyer's motion to dismiss characterizes the complaint as containing only two claims for relief, and fails to specify the nature of those two claims. Presumably, the reference to two claims is intended to distinguish between two general categories of claims; those seeking a denial of the debtor's discharge under Code § 727 and those objecting to the discharge of particular debts under Code § 523. Additionally, in his memorandum accompanying the motion to dismiss, Overmyer states that the motion is directed to only twenty-four of the twenty-six claims for relief. This memorandum is also vague in that it does not indicate which two of the plaintiffs' claims are not attacked by the motion. The basic thrust of Overmyer's challenge to the claims for relief, however, is that they fail to "state facts spelling out a good cause of action" and are impermissibly based upon an unenforceable judgment of the Ohio court. *See* Affirmation of Sidney H. Reich in Support of Motion to Dismiss at 4–6. The court has reviewed each of the twenty-six claims for relief under Fed.R.Civ.P. 9(b) and 12(b)(6) and Fed.R.Bankr.P. 7009 and 7012(b) and concludes as follows:

■ Claims 1–6, 8, 12, 15–17 and 20–23 set forth sufficient facts to satisfy pleading requirements under Fed.R.Civ.P. 8(a)(2) [2] and do not refer to or rely on the decision of the Ohio court. The motion to dismiss is therefore denied as to these claims which state grounds under Code §§ 523 and 727.

■ Claims 7, 9–11 and 14 are deficient in that they fail to state when the acts barring discharge occurred. These claims are founded upon subsection 727(a)(7) which bars a discharge where "the debtor has committed any [fraudulent or wrongful] act

2. Fed.R.Civ.P. 8(a) provides in pertinent part: "A pleading which sets forth a claim for relief ... shall contain ... (2) a short and plain statement of the claim showing that the pleader is entitled to relief."

specified in paragraph (2), (3), (4), (5) or (6) of [§ 727(a) ], *on or within one year before the date of the filing of the petition or during the case,* in connection with another case concerning an insider." 11 U.S.C. § 727(a)(7) (emphasis added). The plaintiffs' failure to plead that the statutorily proscribed acts occurred either *within one year before the filing,* or *during this case,* renders these claims vulnerable to dismissal. The motion to dismiss is therefore granted as to claims 7, 9–11 and 14, with leave to amend within ten days of the order to be submitted.[3]

■ Claim 13 must be dismissed since it does not set forth any of the five statutory grounds for the denial of discharge contained in Code § 727(a)(2), viz. transfer, removal, destruction, mutilation or concealment of property. The claim only states that Overmyer refused to turn over property. A refusal to turn over property to the debtor or its trustee in a separate case is not a ground barring discharge under §§ 727(a)(2) and (7). *Cf.* 11 U.S.C. § 727(a)(6)(A) (refusal to obey court order bars discharge). The motion is therefore granted as to claim 13.

■ Claims 18–19 and 24–26 all share a common deficiency in failing to plead specific facts establishing fraud as a basis for nondischargeability under Code § 523(a). Fed.R.Civ.P. 9(b) requires that fraud be stated with particularity. As stated in Collier's Treatise on Bankruptcy:

> [D]espite the requirement that the complaint contain a short and plain statement, the grounds alleged to constitute a bar to bankrupt's discharge should be alleged with particularity and not by way of general averments. The underlying reasons for Federal Civil Rule 9(b), adopted by Bankruptcy Rule 709, which requires that the circumstances constituting an alleged fraud be stated with particu-

larity, are equally applicable to an averment of an act which plaintiff contends should bar the bankrupt's discharge.

1A Collier on Bankruptcy ¶ 14.07 at 1285–86 (14th ed. 1982). It is clear that claims 18–19 and 24–26, all alleging fraud or a form of fraud, are entirely devoid of the requisite supportive and particularized facts. Furthermore, the plaintiffs' attempt to incorporate by reference portions of the Ohio Bankruptcy Court's opinion to lay the groundwork for the fraud claims must fail for the reasons set forth earlier in this opinion. Because the Ohio court's judgment and decision were automatically stayed as to the debtor, Daniel H. Overmyer, they may not be used to resurrect the plaintiffs' otherwise deficient claims. For the foregoing reasons, claims 18–19 and 24–26 are dismissed with leave to amend within ten days of this order.[4]

To summarize, claims 1–6, 8, 12, 15–17 and 20–23 are adequately pleaded and as to these claims the motion to dismiss is denied. Claims 7, 9–11 and 14 lack allegations of facts essential to establishing grounds for relief and are dismissed with leave to replead within ten days from the order of this court. Claims 18–19 and 24–26 fail to contain particularized facts to support their allegations of fraud and are dismissed with leave to replead within ten days of the order of this court. Claim 13 does not state a ground for the denial of a discharge and is dismissed with prejudice.

Submit order on notice in accordance with the foregoing rulings.

---

**3.** Fed.R.Civ.P. 15(a) provides that leave to amend "shall be freely given when justice so requires." Leave to amend is appropriate "where the moving party has not been guilty of bad faith and is not acting for the purposes of delay, the opposing party will not be unduly

prejudiced, and the trial of issues will not be unduly delayed." 3 Moore's Federal Practice § 15.08[2] (2d ed. 1983).

**4.** *See id.*